IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JAMES WILLIAMSON                                                                            PLAINTIFF

V.                                                                    CIVIL ACTION NO. 1:20-CV-60-DAS

NETTLETON SCHOOL DISTRICT
and TIM DICKERSON                                                                         DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court on motion of the defendant, Nettleton School District, for summary judgment (Dkt.36) and the motion of the defendant, Tim Dickerson, for judgment as a matter of law based on qualified immunity. (Dkt. 38) The plaintiff has not filed a response to the motion for qualified immunity. After considering the motions and the response thereto, the court finds as follows:

### 1. FACTS

The material facts in this case are not in dispute. In January 2020, a friend advised the plaintiff, James Williamson, of his suspicions about a relationship between Eric Erickson, a soccer coach with the Nettleton School District, and Williamson's wife. On January 20, 2020, Williamson confronted his wife who confirmed a relationship between the two. At that time Erickson and the Nettleton soccer team, including Williamson's son, were in route to play a match in Vardaman, Mississippi. Williamson drove to Vardaman intending to, as he put it, "physically confront" the coach.

When he arrived in Vardaman, Williamson walked on the soccer field and immediately started punching Erickson. The altercation, which occurred shortly before the game was

1

scheduled to begin, was witnessed by the soccer teams, parents, and others. Several members of the team recorded the fight on their cell phones and posted the videos to social media. Some videos have been submitted to the court as exhibits to the motions. Law enforcement was either already at the game or quickly called to the scene, but both Erickson and the principal of the Vardaman school declined to press charges against Williamson.

In the aftermath of this attack, Erickson resigned his positions as school safety officer and soccer coach. Around the same time, on January 31, 2020, the defendant, Dickerson, Superintendent of the Nettleton schools, wrote Williamson telling him he was banned from attending any Nettleton School sporting events (home and away), including practices, for one calendar year from the date of the occurrence on January 21, 2020.

The plaintiff was advised that he could appeal the superintendent's decision to the Nettleton School Board and chose to do so. He and his attorney appeared at a school board meeting and his attorney argued against the superintendent's decision, but the school board affirmed that decision.  As a result, the plaintiff opted to file this lawsuit instead of pursuing any further appeal.

In his deposition, Superintendent Dickerson testified that, after discussing the situation with counsel, he decided to impose the one-year ban based on "the severe nature of the assault." "It has to do with the act of what Mr. Williamson did to one of our coaches." He considered Williamson dangerous, specifically to Erickson. The Superintendent admitted he could not say if Williamson was a continuing danger to Erickson because he could not predict the future.

## SUMMARY JUDGMENT

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and that the

moving party is entitled to judgement as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial responsibility to inform the district court of the basis for its motion and identify those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id*. at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts demonstrating a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash*., 276 F.3d 754, 759 (5th Cir. 2002); *S.E.C. v. Recile,* 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000). Importantly, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-W. Packaging Corp*., 602 F.3d 374, 379-80 (5th Cir. 2010). Pursuant to Rule 56(c)(1), a party asserting that a fact "is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials."

## QUALIFIED IMMUNITY

Qualified immunity protects government employees from civil liability so long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Wernecke v. Garcia,* 591 F.3d 386, 392 (5th Cir.2009) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). However, "a reasonably competent public official should know the law governing his conduct." In general, "the doctrine of qualified immunity protects government officials from ... liability when they reasonably could have believed that their conduct was not barred by law, and immunity is not denied unless existing precedent places the constitutional question *beyond debate.*" *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017) (citations and brackets omitted).

The Supreme Court has mandated a two-part test for analyzing immunity defenses. *Saucier v. Katz,* 553 U.S. 194 (2001). *Saucier* required the lower courts to consider: (1) whether the facts alleged by the plaintiff actually amount to a violation of a constitutional right; and (2) if so, whether that right was "clearly established" at the time of the misconduct. *Id.* at 201. The Supreme Court has since held that while this two-part test is beneficial to resolving qualified immunity claims in most instances, it is not mandatory to address both prongs to resolve the issue. *See Pearson v. Callahan,* 555 U.S. 223 (2009).

## DISCUSSION

The plaintiff filed suit alleging violation of his procedural and substantive due process rights under the Fourteen Amendment claiming a violation of his constitutional right to his children's care, custody, and education. Williamson also asserts that the assault should have been reported and pursued criminally, instead of banning him from Nettleton sporting events, while he admits he never wanted to be subjected to criminal charges. He finally claims his First

4

Amendment rights were violated by this ban because it meant that he could not voice his criticism of the coach and the school board at sporting events.

## DUE PROCESS CLAIMS

As the defendants point out, the plaintiff must first show a constitutionally protected interest to invoke the substantive and procedural due process protections of the Fourteenth Amendment. This amendment prohibits the states from depriving persons of life, liberty, or property, without due process of law." U.S. Const. amend XIV. The plaintiff argues he has made the required showing because he has the long-recognized fundamental right to control the upbringing and education of his children and he further argues these rights have been abridged by the defendants' actions. The right of a fit parent to the care, custody, and control of their children is uncontested, but the court finds these rights are not implicated in this action, nor were his rights abridged by the acts of the defendants. *See, e.g., Troxel v Granville,* 530 U.S. 57, 67 (2000).

While it is true that Williamson has fundamental rights in the custody and upbringing of his children including the right to make decisions about the education of his children, the rights of parents are substantially limited in the arena of public education. The parents' rights in deciding on the education of their children is unrestrained in the right to decide between a public education, a private education, or home-schooling of his children. But if a public education is elected, the responsibility and control of public education is largely vested in the states and local authorities who have broad authority in regulating how they provide that education. Parents do not have a protected right "in the separate components of the educational process," such as participation in interscholastic activities, sports, or to control assignment to advanced placement classes, or attendance in a particular school. *Nevares v. San Marcos Consolidated. Independent*

*School Dist.,* 111 F.3rd 25, 27 (5th Cir. 1997). "[P]arents simply do not have a constitutional right to control each and every aspect of the children's education and oust the states authority over the subject." *Cornerstone Christian School v. University Interscholastic League*, 563 F 3rd 127, 136 (5th Cir. 2009).

The defendants argue persuasively that Williamson does not have a constitutionally protected right to attend sporting events in which his children participate. In support of this position the defendants cite multiple cases that have found students have found no constitutionally protected interest in participating in extracurricular sporting events at their schools, but rather only unprotected expectations. The school district and superintendent argue that if the children do not have a protected interest in participating in these sporting events, the parents, *a fortiorari,* cannot be held to have protected rights in attendance at these events.

In matters of administration regarding high school athletics, the federal courts have refused to function as super referees. "Questions about eligibility for competition may loom large in the eyes of youths and even their parents. We do not disparage their interest in concluding, as here, that these issues are not of constitutional magnitude. Behind this observation rest important values of federalism and the reality that the mighty force of the constitutional commands ought not to be so trivialized." *Hardy v. University Interscholastic League*, 759 F.2d 1233, 1235 (5th Cir. 1985); *Niles v. University Interscholastic League,* 715 F.2d 1027. 1031(5th Cir. 1983) (Participation in interscholastic athletics is not an interest protected by the Due Process Clause); *compare*, *B.A. v Miss. High School Activities Assoc.,* 857, 864 (N.D.Miss. Oct.18, 2 2013) (Students had standing to challenge regulations limiting student-athletes participation in non-school sponsored athletics, based on an equal protection challenge. But the regulations were

**6**

upheld because rationally related to legitimate state interests and because the classifications did not trammel on fundamental rights or interests, nor burden any inherently suspect class.)

Given the consistent holding of the courts that there is not a constitutional right to participate in athletic events, the court finds that Williamson has not provided authority to find a constitutional right to attend the sporting events. "[T]he right to procedural due process is applicable only to state action which impairs a person's interest in either liberty or property." *Jeffries v. Turkey Run Consolidated School District,* 492 F.2d 1, 4 (7th Cir.1974). Likewise. "the constitutional right to "substantive" due process is no greater than the right to procedural due process. Accordingly, the absence of any claim by the plaintiff that an interest in liberty or property has been impaired is a fatal defect in [his] substantive due process argument." *Id.*

Alternatively, the court finds that Williamson has been provided with all process due, procedurally, and substantively. Regarding procedural process, Williamson had the right to appeal the Dickerson's decision to the Nettleton School Board and exercised that right. He was represented by counsel on this appeal and attended the meeting at which the appeal was considered. He admitted that the school board allowed his attorney to present argument on his behalf, and that no limits were imposed by the school board in the attorney's presentation of the appeal. Williamson did not elect to pursue any further appeals, and the court can find no constitutional fault with the process provided to Williamson.

Williamson has made a rather bizarre argument that he should have been criminally prosecuted instead of being subjected to a ban on attendance. He cites a Mississippi statute that requires principals, teachers, and employees to report possible crimes to superintendents and requires superintendents, in turn, to report crimes committed on school property to the proper law enforcement authorities. Miss. Code Ann. § § 37-11-29 and 37-11-29(1). The statute

7

requires the reporting of specific criminal acts if committed on school property or during a school related activity, including a simple assault upon a school employee. Miss. Code Ann. § 37-11-29 (6)(d). It also provides that individuals making the required reports will be presumed to be acting in good faith, and that if acting in good faith, will be immune from any civil liability. The plain language of the statute does not support a cause of action or right to Williamson. Nor can the statute be fairly interpreted as displacing the authority of school authorities to respond to disruptive, threatening, or violent conduct at school properties. After examining the matter, it is clear to the court that this statute does not mandate criminal proceedings in lieu of administrative action by these authorities.

      As to his substantive due process claim, both sides have cited cases recognizing the need for and the authority of school authorities to be able to respond to the actions of individuals, including parents, whose conduct is disruptive to the educational process, including threatening, harassing or potentially violent behavior. In these cases, courts upheld banishments from school property that unlike this case did not involve violence.

      In *Lovern v. Edwards*, 190 F.3d 648, 65-56 (4th Cir. 1999) a father insisted that a principal not comply with a mandatory one-game suspension for a wrestling coach after he was evicted from a game. When not satisfied with the principal's response, he complained to the superintendent's office to the point where a substantial amount of the employee's time was consumed handling this one parent's complaints. When his son was not selected for the basketball team, the father complained by telephone to the coach at work and home and to the principal multiple times. He also attended school board meetings alleging he discovered the misuse of public funds and made multiple allegations of corrupt conduct. Ultimately the superintendent banned Lovern from coming on any of the school district's properties because of

"pattern of verbal abuse and threatening behavior towards school officials, including staff and school board members." Lovern responded by threatening to expose corruption by the school officials and initiating legal action against various public entities and officials, including seeking twenty-five million dollars in damages.

After a hearing on Lovern's motion for a preliminary injunction, the court found Lovern could show neither irreparable harm nor a likelihood of prevailing on the merits. The court then dismissed the complaint without prejudice because Lovern had failed to make a substantial federal claim. "School officials have the authority to control students and school personnel on school property and have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property." *Id.* at 655.

Likewise in *Cunningham v. Lenape Regional High District Board of Education*, 492 F. Supp. 2d 439, (D. N.J. 2007) a father, who was a rejected applicant for the coaching position, claimed in his lawsuit that he had been expressing his opinions about the qualifications and methods of wrestling coaches for several years. He alleged his constitutional rights were violated when he was completely banned from entering school property, including from wrestling matches, basketball games and graduation ceremonies. The school contended he was banished because of a pattern of abusive conduct toward staff members including directing profanity at them. Though Cunningham denied any threatening conduct, multiple staff members' affidavits showed he was involved in multiple confrontations; that he had been verbally abusive and had threatened and harassed the wrestling coaches. In one affidavit a coach affirmed Cunningham, since his hiring, had threatened, harassed, personally vilified, and undermined the coach. He felt it was only a matter of time before Cunningham physically assaulted him. The court found the school need not wait for the threat to ripen into actual violence and the defendant's belief that the

9

plaintiff represented a danger was objectively reasonable. In dismissing the case, the court found Cunningham could not hide behind the First Amendment to harass and bully the staff and faculty of the school.

> "[T]he reality of our times, and indeed common sense, suggests that the public—parents included—cannot have unfettered access to the halls of learning. We are not too far removed from the tragedies of Columbine or the Amish school shooting to forget that the safety of our children and school officials is paramount." *Id.* at 450-451.

In *Rodgers v. Duncanville Independent School District*, 2005 WL 770712 (N.D. Tex. Apr. 5, 2005) (Report and Recommendation adopted, 2005 WL 991287 (N.D. Tex Apr. 25, 2005)), the court granted summary judgment for a school district that banned a father from the school premises. The father had yelled at a first-grade teacher and followed her to her car; had swatted his son and another student on their backsides for misbehaving in the halls and had used profanity in speaking with school administrators. When told he would need to formally schedule a conference with teachers to discuss his son, he continued to come on campus and taunt the teachers. Twice police were called to remove him from the campus. He was then banned from the premises and began to picket at the school. Though he claimed his First Amendment rights were being trampled, the court granted summary judgment on the federal claims. The court noted there was no evidence of any intent to retaliate based on his speech and further noted the post-banishment picketing had proceeded without interference from the school. The court found that because this father was addressing private matters about his son, not matters "of public concern," Cunningham could not establish a violation of his First Amendment rights. *Connick v Myers,* 461 U.S. 138, 146-47 (1983).

The plaintiff acknowledges this line of cases but seeks to distinguish his conduct and motives from these cases. He cites to *Johnson v. Perry,* 859 F.3d 156 (2nd Cir. 2017) in support

of his claim that the sanction here was inappropriate. But in *Johnson,* unlike the present case, there was an ongoing conflict between the Johnsons and Perry, the school principal who also imposed the ban. The court found that while the evidence was disputed, the evidence favorable to the Johnsons would support a finding that Perry banned the Johnsons in retaliation for their complaints that Perry was bullying their daughter. Because of evidence indicating the case might be a state-imposed punishment based on the content of the Johnsons' speech, the principal was properly denied summary judgment.

But there is a distinction between Williamson's case and others—Williamson violently and repeated struck the coach on the soccer field before an audience, including students, waiting for the game to begin. Even if Williamson had a due process right to attend these sporting events, the federal courts are neither super referees for high school athletics, nor do they function as a super school board, free to substitute its judgment for the responsible school officials and board. At most the decision need only be supported by a rational reason. In the face of Williamson's violent behavior the court finds the rational basis test is easily met in this case.

Williamson stresses that the motivation behind the assault on this soccer coach was personal and that because the soccer coach is no longer employed the ban was unnecessary. Williamson argues the defendants need to prove a continuing threat or a basis for predicting future violence from Williamson but points to no authority to support that argument. These are arguments that could have been and may have been considered by the school board, but they are not factors that make a one-year restriction on attendance irrational. That a sanction was imposed in response to this attack was not irrational considering the districts need to provide for order, safety and decorum at school events.

## **FIRST AMENDMENT RIGHTS**

Finally, Williamson argues the one-year restriction on his attendance at Nettleton athletic events is a violation of his free speech rights because he cannot criticize the now former soccer coach for the way he coached and for his relationship with the plaintiff's wife. This court does not believe this case has anything to do with speech or the First Amendment right to free speech. The superintendent and the school board were not concerned with or responding to words or threats by Williamson. There is no speech or conflict before the attack on Erickson to support an inference of retaliation by the school authorities against Williamson for exercising his free speech rights. There is not one scintilla of evidence produced to directly, or by any reasonable implication suggest that the sanction imposed was motivated by any desire to impair or restrict Williamson's future speech.

The court considers it pertinent that Williamson has multiple other avenues and venues to publicly complain about Erickson. He was not restricted from the school's campus generally, nor from school board meetings which would be an appropriate forum for discussions of any matters of public significance. *Connick,* 461 U.S. 146-47 (1982).

The First Amendment claim in this case is deployed transparently as an offensive weapon to avoid any sanction for his violent conduct. If verbally abusive and harassing behavior justify removing and banning parents from school facilities and functions, despite incidental restriction on expressive conduct, Williamson's dangerous, violent, and appalling attack, justifies the limitations placed on him. Accepting Williamson's reasoning would mean no person could be banned from school premises because such a ban necessarily restricts speech on those premises. Because "the Constitution does not leave state officials powerless to protect the public from

12

threatening conduct that disturbs the tranquility of schools," and the state's response is rational, the court finds, the First Amendment claim is without merit. *Carey v. Brown*, 447 U.S. 455 (1980),

## QUALIFIED IMMUNITY

Dickerson raised the defense of qualified immunity, and Williamson has the burden to present evidence to show that Dickerson is not entitled to qualified immunity. While the facts are not disputed the plaintiff has not attempted to show that he has overcome this defense. Unless the plaintiff can show that Dickerson violated one or more of Williamson's constitutional rights and that those constitutional rights were clearly established at the time of the violation, Dickerson is entitled to judgment. Having concluded above that the plaintiff has failed to demonstrate any evidence to support a constitutional violation, his claims against Dickerson necessarily fail. Consequently, Dickerson is entitled to a dismissal with prejudice.

## CONCLUSION

The court finds that the motions for summary judgment and dismissal based on qualified immunity should be granted. This action shall be dismissed with prejudice. A separate judgment will be entered.

This the 19th day of August, 2021.

/s/ David A. Sanders
U.S. MAGISTRATE JUDGE